OPINION
{¶ 1} Charles D. Taylor appeals from a judgment of the Montgomery County Court of Common Pleas, which found him guilty of trafficking in crack cocaine, possession of crack cocaine, and possession of criminal tools following his plea of no contest. The trial court had previously denied his motion to suppress evidence. Taylor was sentenced to one year on each count, to be *Page 2 
served concurrently, and his driver's license was suspended for six months.
 I {¶ 2} Taylor raises one assignment of error on appeal.
 {¶ 3} "THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO SUPPRESS BECAUSE THE WARRANTLESS SEARCH AND SEIZURE VIOLATED THE APPELLANT'S RIGHTS UNDER ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION AND THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION."
 {¶ 4} Taylor contends that police officers relied on a "mere hunch" that a drug transaction had occurred and did not have the reasonable, articulable suspicion required to stop him. This is the sole contention advanced on appeal, notwithstanding the wording of the assignment of error.
 {¶ 5} The state's evidence established the following facts.
 {¶ 6} In the evening of March 30, 2007, Dayton police officers noticed a blue Pontiac Grand Prix driving very slowly in a "very high drug area" along Third Street. According to Sergeant Mark Spiers, the car was driving at an "extremely slow rate of speed, actually almost to the point of impeding traffic" when it first caught his attention. The two occupants of the car were repeatedly looking over their shoulders, and the passenger in the car was talking on a cell phone. According to Detective Joey Myers, these are "typical" behaviors that officers look for in drug investigations.
 {¶ 7} The officers saw the Grand Prix pull into a gas station, and the female driver entered the station for a short time. When she returned to the car, she drove across a small adjoining street to a Rite Aid parking lot, where she parked the car far from the entrance to the store. A few minutes later, a silver Cadillac Escalade driven by Taylor pulled into the Rite Aid parking lot and parked alongside the Grand Prix. The passenger in the Grand Prix, later identified as "Clark," got out of the *Page 3 
car, went to the window of the Escalade, and reached both arms inside the vehicle. At the same time, Taylor turned his torso toward Clark. Clark then returned to the Grand Prix. Although the officers did not see drugs in Clark's hand, they believed that a drug transaction had occurred. Officers approached the Grand Prix and Escalade in several vehicles, whereupon Detective Joey Myers saw Taylor make a move toward the center console of the Escalade with his right hand. When the officers questioned the occupants of the Grand Prix, Clark admitted to Detective Myers to purchasing crack cocaine from Taylor, after which Taylor was handcuffed. After Clark told Detective Myers he had purchased crack from Taylor, Detective Myers recovered a baggie of crack from the center console of the Escalade. Taylor stated that he "wanted to come clean." Detective Sean Copley Mirandized Taylor and Taylor admitted to selling $20 of crack cocaine to Clark. He also told the officers that there was more crack in his car, apparently unaware that Detective Myers had already seized it. Later, Taylor told Sgt. Spiers he sold crack to make some extra money.
 {¶ 8} Detective Copley testified that the Rite Aid parking lot and the adjacent gas station were a "pretty common area for open air drug sales or meeting places prior to drug sales" where hundreds of arrests had been made in the last several years.
 II {¶ 9} Taylor contends that the state did not offer any reasonable evidence of a drug transaction that justified the police officers' decision to stop and question him. The trial court concluded that "the officers were able to point to usual and customary actions of those involved in drug transactions" that created a reasonable suspicion of criminal activity.
 {¶ 10} Under Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868,20 L.Ed.2d 889, a police officer may briefly stop and detain a person for investigative purposes if the officer has a reasonable *Page 4 
suspicion supported by articulable facts that "criminal activity may be afoot," even if the officer lacks probable cause to make an arrest. We look at the totality of the circumstances to determine whether the police officers had a particularized and objective basis for suspecting that Taylor was engaged in criminal activity. United States v.Arvizu (2002), 534 U.S. 266, 122 S.Ct. 744, 749-750, 151 L.Ed.2d 740. "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that `might well elude an untrained person.'" Arvizu, 534 U.S. 266, 122 S.Ct. at 750,151 L.Ed.2d 740, quoting United States v. Cortez (1981), 449 U.S. 411, 418,101 S.Ct. 690, 66 L.Ed.2d 621.
 {¶ 11} We agree with the trial court's conclusion that the police officers had a reasonable, articulable suspicion that criminal activity was occurring when they approached Taylor to question him. The Grand Prix's unusual driving patterns, the exaggerated concern of its occupants with checking their surroundings, the decision of both drivers to park far from the store entrance, the fact that the occupants conducted some type of quick interaction, and their presence in a parking lot that was known to the police for a lot of drug activity justified further investigation.
 {¶ 12} The assignment of error is overruled.
 III {¶ 13} The judgment of the trial court will be affirmed.
GRADY, J. and DONOVAN, J., concur.
Copies mailed to:
 Hon. Michael T. Hall *Page 1